oral argument. I can see 15 minutes per side for the appellant. Good morning, your honors. May it please the court, my name is Dennis Torres. I represent the appellate in this matter, Ricky Brown. I respectfully request three minutes for my rebuttal. Thank you, your honor. Your honors, before I begin, I'd like to give credit where the appellate litigation clinic worked very diligently on the briefing. Unavoidable conflicts prevented them from being here. I owe them a great debt of gratitude, as does Ricky Brown. Thank you very much. Your honors, Ricky in this appeal raised three issues principally. I would like to try to address at least two of them this morning in my brief time. I would like to first of all tackle the issue of the suppression motion that dealt with the search warrant of Mr. Brown's residence in March of 2011, specifically on March 31st, 2011. This case began on March 8th when Ricky was arrested with a number of two other individuals in the evening. The reason the motion to suppress was filed was because there's no nexus established between the evidence that the patrolman and the DEA had and Mr. Brown's residence. It was after all the search of his residence that was at issue. Not only was there no nexus, the information that they had was stale. We cite a number of cases from this court, your honors, where evidence far greater was viewed as not being sufficient for the nexus. For example, the case we cite, United States v. McPherson, was of an individual who had drugs on his person in front of his residence and that was not deemed to be a nexus sufficient to search the person's residence. Juxtaposed to that, in United States v. Kenny, also a case from this court from 2007 involving methamphetamine, the defendant's residence is searched because the defendant is caught with his own meth lab at the meth lab and also agents see that. Nothing of this sort is here. How would you bring all these cases together to state a rule? We've got Frazier, we've got McPherson, we've got Miggins, all pretty fact intensive. What is the rule that you would state for what creates an adequate nexus? And perhaps as you address that, consider how that relates to being an active drug seller or drug dealer. Is that the key to it or is there something beyond that that the nexus would be to give us a rule? Judge Stranch, in 2008, this court decided United States v. Gunter and I think that was a good start for that rule. It stated, and this is quote, reliable evidence that exists connecting the criminal activity with the residence. The notion of reliability, I think, is a key factor. The court obviously used that word intentionally. It's not just any evidence. It's reliable evidence that creates that level of probable cause. After all, it is a person's residence, that portion that we reserve for some type of heightened scrutiny. And in this instance, certainly, it illustrates why that scrutiny is so important. I think that's a good start, Your Honor. I also think that the court's continuing focus on the relationship between the two, the person or the evidence, and their residence, is a good point of focus. That chasm needs to be brought together before probable cause to search the residence can be found. Another case, Your Honor, United States v. Gunter itself. Gunter was a case involving a defendant who's observed going into his residence before he does the drug deal, all observed. In that case, it seems like there's a higher level of reliability because it's eyewitness testimony right there at the residence with the person involved and then subsequently involved with a drug deal. That type of level of reliability, I think, is what this court should be focusing on in its future jurisprudence, and that's why we raise this issue so strongly. Your Honors, I'd like to move to the second issue, which is in the district court below, the subject of a motion in limine from the government. Prior to trial, the government moved in limine to have all references of Mr. Brown's medical marijuana license prohibited. Without much ado, there was an oral argument on the matter. There was no opposition brief from the defense, but in essence, there was a short argument and the medical marijuana license was precluded from this trial. We believe that was also error. We believe that was error. The standard of review is abuse of discretion, Your Honor. It is abuse of discretion. It's a difficult standard for me to hear meet. We think it was met here resoundingly, though, and for this reason, 401 of the rules of evidence essentially establishes a relevant standard that this court itself, in V&M Star Steel, the case we cite, has defined as, quote, extremely liberal or requiring, I quote, extremely liberal reading. In this case, at that point in time, Mr. Brown was charged with trafficking in marijuana, an element of which must be proved beyond a reasonable doubt his intent to traffic. No one, including defense counsel standing at this podium today, disputes the possession aspect of the marijuana, but in trafficking in marijuana, that intent element must be proven beyond a reasonable doubt, and Mr. Brown has a right, a protected right by this court, to present evidence that would establish the contrary. The government argues for plain error here, correct? They do, Your Honor. What is your response to that? Under that standard, I think we also win. I'll challenge this even under plain error, and here's why. I don't know, and none of us knows in this courtroom how a jury would react if they had seen the medical marijuana license as part of the evidence or her testimony, the doctor who issued it. Maybe Mr. Brown would have taken the stand to discuss why he had that medical marijuana license. Maybe we would have gotten a legislator involved to say why Maryshigan has that law. It's one of 19 other states, plus the District of Columbia. What we do know, though, is that with that bit of evidence in hand, the entire rest of the evidence takes on a different tone and color. It is one thing to say, this person has marijuana, an illegal substance, in their home. They have scales. They have a license. They have a license. They have a license. And we create this picture of evil or criminality, all of that. As if you had a filter in front of the facts, all of that changes when we now say, ah, but under the state's laws, under the laws of Michigan, that's legal. In that filter, Your Honor, the whole tenor of this case changes. I don't know what that tenor exactly is. I think our country is still grappling with that right now, as a whole country, as we move to a more liberalizing, liberalization of marijuana laws. But that's not for us to decide here. The only thing we have to decide is this is a 401 violation or not. Is this relevant? As to that very key factor that the government had approved, beyond a reasonable doubt, intent to traffic, I would urge the court to reconsider what Judge Hood did in the district court. Namely, that this issue is so principled to the government's case that Mr. Brown had indeed a right to present his defense in that point. And that's why I think even a plain error. It's a plain error. I think it even, for that reason. That qualifies as affecting, affecting, not creating the opportunity to affect, but as affecting his substantial rights. Yes, because this court's jurisprudence and virtually every other circuit in this country has said that a defendant has a right to put on a defense. Indeed, we put that as a standard boilerplate jury instruction in this circuit and in others across the country. His defense was that document. His defense on that element was that document. That's such a critical component of this case, Your Honor, that yes, I do think it also meets plain error. More importantly, into the integrity of the system of justice that we have, how dare we not prevent, how dare we not allow, excuse me, or prevent Mr. Brown from telling his own life story when none of us, I think, would disagree that with that powerful piece of documentation in front of the jury, the entire case changes. Is this an argument of first impression? It is, Your Honor. Is there law out there? Your Honor, very little, and none, as to the element of intent in this instance. It's all too new, Your Honor, and that's our thinking on it. Well, there's certainly law out there. You can't use the marijuana license to contest possession, and you acknowledge that. And we make that perfectly clear, Your Honor. We are not contesting that at all, and we don't wish to. It's merely the trafficking aspect of this case. And he was within the allowable amount. Indeed. The amount found in his home was underneath. That's correct, Your Honor. Your Honors, those are the two elements that we focus on in this oral argument and feel so strongly about. There is a third matter, of course, and that's the drug ledger. The district judge below allowed it in without authentication under Rule 901, and in that instance the defense counsel did object so that it would also be as a legal conclusion a de novo standard or an abuse of discretion as an evidentiary issue. We also have raised plain air issues with regard to that as well. We feel that there was not sufficient confrontation rights protected when that document came in. But more importantly, that document was never authenticated properly. It was admitted with the district court saying, well, it will just go to the weight of the evidence and you can argue it before the jury. But that's not how authentication works. And I think... Might I return to the nexus argument? I know you don't have much time left. Give me the best argument you have based on the facts of this case as to why the nexus was not satisfied in order to search the home. Yes, Your Honor. If this court carefully reads the affidavit on which this warrant was served and issued and served and executed, putting aside the staleness issue, 22 days is a long time in this context to explain the abuse, but I want to put that aside. If you carefully parse out all the paragraphs, here are the seven reasons that the officer gives to the court to say there was nexus. One, and I don't know how this establishes nexus, but this is my best argument, Your Honor, in the contrary, obviously. He was coming out of Mr. Middleton's residence and that somehow establishes residence, nexus with Mr. Brown's residence, which was roughly 7.44 miles away. First issue. Okay, the other argument being that he left his car. Okay, he left his car in front of Mr. Middleton's home is one of the arguments. And the car smelled of narcotics, according to the canine. Well, I don't know how that relates to Mr. Brown's residence at all. It's his car. It was registered to his home, but it has no relationship to his residence. And God knows if he's allowed to have possession of marijuana, it might indeed smell like narcotics legally. Number two, they found cash on him the night they arrested him. A large sum, we admit it, $4,813. Again, I have no idea how that links to the residence. Third, fourth in this instance, I apologize. They find two cell phones on Mr. Brown the night he is arrested. On March 16th, they obtain a cell phone search warrant and execute that warrant on the 17th. They learn that in Mr. Brown's cell phone, one of them, he has in his contacts Marcel Middleton's phone numbers. I don't understand how that connects with residence at all. You concede it was his telephone? They did say it was his telephone. But again, it has nothing to do with his residence, especially given this wireless nature of cell phone activity now. There was a text message on one of the phones, quote, he said 1175 or 112541, end of quote. I again have no idea how that links to residence at all. But the officer used that as a basis for issuing this warrant. Finally, excuse me, there are two more points, Your Honor, and I see my time has expired. May I continue to answer? Go ahead. Thank you, Your Honor. The cell phones that Mr. Brown had were not contract phones. They were toss-away phones. Again, I have no idea how that links to the residence or ability to search his residence. And finally, the officer mentions that the criminal convictions of Mr. Brown, when they do a run of his, had a 1999 conviction for pot trafficking, but a 1996 acquittal for drug offense. Again, I have no idea how that links to the residence, but indeed that's what they cite. Interestingly, I believe that the patrolman also thought he had a very thin case for probable cause, because if you read the affidavit carefully, he repeats what appears kind of, somewhat, maybe, to be the strongest element in the very final paragraph, which is that the car they found in front of the house of Mr. Middleton on March 8th is registered to the home of Mr. Brown. How that gives anyone the ability to search my home, for example, because my car is registered to my address, is beyond me. That's why we feel so strongly, Your Honor, and indeed we believe that even on a plein air basis, this matter would also win. Thank you, Your Honors. Thank you. Good morning. May it please the Court, Stephanie Hayes of the United States. I'd like to pick up with the first question that was asked of my opposing counsel, which was by you, Judge Trench, how do we reconcile, or how do we think about the cases that kind of start maybe with Jones, go to Miggins, then we have Gunter from 09, which I think is a very helpful case, and then we have Frazier, which could look like the Court's trying to walk back from the holding that it's a reasonable inference that if you're dealing drugs that there's going to be evidence of that in your home. And I think... Is it enough just to have dealt drugs, or even the best you've got under that case is that you have to be an active drug dealer, right? Right. I think that's the way to put it. I think the language of Gunter, too, is ongoing drug dealing. And so Frazier, which would appear to be the worst case for us, is really not so bad, because all Frazier is saying is that a defendant's status as a drug dealer is not enough to get into his home. And what Frazier meant by that was, in that case, the defendant is an unproven informant, kind of pointing the finger and saying that so and so is a drug dealer. And then that was essentially what the affidavit in Frazier was. We're a far cry from Frazier here, Your Honors, and I think that the best argument for the nexus as to how to get into Mr. Brown's house is that... First I want to step back and say that counsel kind of did a line by line reading of the review affidavits, the totality of the circumstances analysis. And the question here is whether there was an arbitrary exercise of the magistrate's authority. And I think the answer is clearly no. But the district court also did find good faith, and I'll touch on that in a moment. But the best argument for nexus is that we have an amount of heroin that is undeniably distribution amount. We have half a kilogram of heroin. And the ability to deliver that within hours from 5.46 p.m. to 7.50 p.m. is when they leave the house with the heroin. All of this is actually better evidence of the ongoing part of this, the ongoing drug trafficking, than what you have in our line of cases where you have a drug dealer dosing it out, dose by dose. He sells a little bit here, sells a little bit here. Here we have half a kilogram of heroin. So I think that's very strong evidence. And I think also we have... Was anything in your opposing counsel's rendition of the affidavit that was inaccurate, or did he leave out anything that you would like to add or supplement? Yes, Your Honor. Thank you, Judge Clay. I would like to add that, and I'm not sure if he touched on this, Mr. Middleton, on a recorded call with the informant, says, I need to wait for someone before I can deliver you this heroin. And then we know that two other men leave with him, and they make some noise about that in the brief, like, well, it could have been the other guy who brought it. But what we know from the affidavit, okay, within the four corners, it's Brown's Yukon, parked outside the house when they search it the next morning, search Middleton's house the next morning. And it's Brown's Yukon, which has been holding narcotics, according to the canine. This is all in the affidavit and before the magistrate. And it's Brown's Yukon that's registered to Brown at Brown's house. And so I think it's a reasonable inference, particularly in line of the already existing case law that says it's a reasonable inference if you're involved in ongoing drug trafficking, that there will be evidence in your home. But here we have a little more, because here we have Brown's car registered to his home, apparently being used to ferry the heroin to Middleton's house and then on to Monroe. What specifically in the affidavit indicates that he couldn't deliver the heroin until someone came? Did he, yeah, that would be helpful because my memory of the language is that, is that they call, they say, and he says, I'm waiting on someone and then the someone comes. Help me with that language. Sure, your honor. I'm referring to page 60, page 60, and it's paragraph 6 where the affiant says that Middleton advised DEA 1, the informant, that he was waiting for someone to arrive before he left. And that Middleton would be leaving, he estimates, in about 10 minutes to meet with DEA 1 and to provide DEA 1 with the heroin. So that's the language I'm relying on there. Now, so I think here we have a district court, and again, I think there's a little bit of confusion in the briefing on the standard of review even here, and I know we have it later too, but it's, the de novo review is of the district court's decision, as Brown points out in his own brief on page 14, because the district court is acting as a reviewing court, but when we're reviewing and issuing magistrate's decision, this court said repeatedly there's great deference to that decision, and again, it's not undertaking a de novo review of the sufficiency of that affidavit, so I wanted to point that out, and so the district court here, I think, was right to pay that great deference, and it was also right to find good faith. Here we have no culpable police conduct to deter. We have an affiant who is piecing together the recorded calls, the information from the surveillance team, information... Well, we don't get the good faith unless you concede that the officers did something illegal, do we? That's correct, Your Honor, and... Well, what are you conceding that they did wrong? Oh, I'm not, Your Honor. I'm just pointing out that if this court had a concern, the district court was also right to find good faith here. There's nothing to deter here, but I think... You're not conceding anything. No, not there. Let the record reflect. Yeah, not there. I really don't think there's anything to concede there, and I understand that there could be some concern about a case like Frazier, where you have someone pointing the finger and saying, he's a drug dealer, and then you go into his house, but we don't have that case before us, so that's why I'm not conceding anything. I want to also talk about the... Unless there are more questions about the warrant, I'd like to talk a little bit about that motion in Lemonade about medical marijuana. How long would it take you to tick through the indicia that he was an ongoing drug dealer that gives you a right to go to his home? Sure, yeah. Would you do that? Yeah, I'd like to. Thank you. I've already touched on the amount that he was involved in helping to ferry, and the short time in which he was able to make it happen. I would also point to the fact that when he's arrested, he has almost $5,000 in cash on him, multiple cell phones, and the drug prior is maybe less probative, but in the totality, because of the age, but in the totality of the circumstances, very helpful. And then finally, the Affian, again, I thought, did a really good job here, went and got another federal search warrant to search those phones that were seized, and finds on there evidence that Mr. Brown is involved in other drug distribution, too, for cocaine. And so that also, I think... How is the statement of numbers for one, tell me why that rises to the level of proof of drug distribution? The text message. Right. I mean, what we're having to do here, what the magistrate's having to do here is rely on a DEA agent saying that, in my experience, $11.75 or $11.25 for one, that's consistent with pricing for an ounce of cocaine in the Detroit area. So that's all I can tell you, because I don't know myself. But I think that's helpful in terms of the ongoing nature or his involvement in drug trafficking, because an amateur, let's say that he... And his defense at trial was this, wrong place, wrong time, and he actually prevailed at a beyond reasonable death standard. He was not convicted of trafficking in heroin, just what was found in his house. But for probable cause, I think the fact that he has a cell phone that indicates he's also involved in trafficking and distributing other hard drugs, to me, shows that this is not a wrong place, wrong time kind of guy. And certainly, I think a magistrate... But how does it connect to his house? What connects him to the house is the line of cases that says it's a reasonable inference that someone who is an ongoing drug trafficker is going to have evidence of that, and his car. What's the strongest case you have for saying the mere fact of being an active drug dealer is sufficient to enable the government to come search your home? I think the best case is probably Gunter from 2009, that talks about how that is a reasonable or reliable inference when you have ongoing drug trafficking. And again, I want to get away from any language that indicates status is a reason to get into someone's home. It's the fact that you are doing this, that means that there's a reasonable inference that you can make, that you're going to have evidence of that in your home. And again, because... I'm struggling with the nexus issue, because a lot of the cases, you've got Jones with the drug deal, right, that actually occurred inside the home. You've got Kinney with evidence of the meth lab. You've got Miggins with signing for a package and immediately going to the home. And Allison, the drug deal happening just outside the home that was searched, and he entered the house right after the drug deal. But you don't have any of that here, do you? No, we don't. So what's the nexus? Well, the nexus is that if you're... I think what might help you, Judge Strange, is if you look at what they're looking for. The warrant wasn't just looking for drugs, some heroin. That was included, but what it was really looking for, and the affiant spent several paragraphs in paragraph two, A, B, I, and J, I think, talking about drug dealers will keep paper. When you're moving that kind of weight, when you're fronting to people, people are owing you money, you've got debts yourself to pay, you have to keep business records. It's a business. And I think it was Abood that says it's not... It's kind of a common sense. You don't need Supreme Court precedent to say that evidence of illegal business activity, you're going to keep it in your home. Okay, so any time you think I'm engaged in illegal business activity, you can just come search my home. No. Isn't that the outcome of that? Of Abood? No, isn't that the outcome of your argument? I'm a drug dealer. You find me in Kalamazoo and, boy, I'm a drug dealer. I've been caught in the middle of a drug deal. Go to Kentucky, search my home, because I'm a drug dealer. Well, I'll just change. If you were caught with half a kilogram of heroin and there are other things indicating that you were not just in the wrong place at the wrong time, that might, yeah, that might be enough to go back to Kentucky to search your home. That might be enough. Because, again, drug dealers keep... To show that there's some connection of the home to the illegal activity, maybe he's running the drug operation out of the home, or there's some evidence that the home's involved in the criminal activity, and we really don't have that here, do we? We don't have evidence that his home was involved in the delivery in Monroe from Middleton's house, but we do have a reasonable inference that he's going to have evidence related to his drug dealing kept in his home. Based on what? You can't just say that. That's just a conclusion. But what's the evidence that made you conclude that? Paragraphs 2A, B, J, and K from the affidavit, Your Honor, where the affiant talks about the fact that it's common for drug dealers to conceal these records and proceeds in their homes. Based on that, but that's not evidence that that particular home is being used in the drug operation. I thought the law had evolved to the point where if there was reliable evidence that someone's actively engaged in drug dealing, that, therefore, you have the right to search their home. That's correct. That's how this Court's cases read, Your Honor. What case says that? Gunther? Jones, Miggins, and Gunther. 2009 Gunther. I think 2008 as well. And, you know, we also just have the kind of general deference and kind of authority that we have given magistrates to give considerable weight to what law enforcement officers have concluded and to make reasonable inferences about where evidence is likely to be kept. And so those are the reasons that I think, you know, here there's a nexus established. I think more recently this Court, a panel of this Court in Blake-Saldivar also kind of talked about this as being a kind of a common sense inference that magistrates are entitled to make. You're talking about U.S. magistrate judges? Yes. Calling a magistrate judge a magistrate is like calling a rear admiral a rear. Well, I didn't mean to do that. I'm sorry, Your Honor. Very well. I can sense that this is the question the Court's most concerned about, so I hesitate to move on to another issue if there are any more questions about it or if you want to pummel me some more on the issue. I don't want to beat it to death. If there's particular language or Jones, Miggins, and Gunther, if that's what you want to stand on, I'm fine with that. I'm just struggling with the fact that you've got standard paragraphs that would go in that are correct. I mean, it's true. The drug dealer probably does keep papers at his or her home, probably does keep information, maybe even drugs. But I'm struggling with the fact that we've got a protection of the home and that I'm struggling with whether just because you are a known drug dealer, I mean, let's call it a slam dunk. You do it. You sell it. You're involved in it, period. Does that mean that you get to go to that person's home and look no matter what? No evidence of that? No. Just the mere fact of being an active drug dealer enables the government to come into your home and search it. I'm struggling with that. Sure. And I think one thing that may ease your mind about it is that it's not as if the case law has evolved to the point where you can literally walk into his home. You still have to go get that warrant. So the home is still protected because a magistrate is still exercising authority and judgment over whether to issue the warrant. But if all you have to do is put in the standard provisions that we might all consider kind of common sense, that it's likely that you do that, then anybody who is engaged in the sale of drugs, his or her home, is open to search at any time. Yes, by committing illegal acts where the evidence is likely to be in the home, you have opened yourself up to the potential of having your home searched. And if I am committing another, if I'm committing the crime of espionage and they think I'm taking home materials from my office, or if they think I'm just taking materials from my office, am I now subject to having my home searched? You know, again, because it's such a, you know, one of the questions you would ask is, is there a rule? What's the rule? Yeah, that's what I'm asking. I'm looking for the nexus rule. You want the rule, right. I want the nexus rule. Right, and I think Not the what can we expect rule. I want the what is tying you to the ability to say there is a reasonable cause to believe that because you engage over here in this behavior, I get to invite your home to check it out. Right, and As to drug dealing. Right, and as the Supreme Court kind of set in gates, and I think, you know, it's kind of, I talk a little bit about it on page 14 of the brief. It's rejected the idea that there would be an idea of a precedent or common law that binds magistrates because when you're making a probable cause determination, you're not supposed to be rule bound, you're supposed to be looking at the totality of the circumstances. And I know that seems like I'm kind of weaseling out of answering your question, but I really think that's the answer given to us by the Supreme Court is that there shouldn't really be a rule. I think what this court has done, the state of the law that's evolved hasn't been to create a rule that lets you into the home, but to basically it's affirming time and time again that it's a reasonable inference to make. But it's not creating a rule. I don't think gates permits us to have a rule that bounds magistrates that way. All right. I see my time has already expired, so unless there are any other questions, I ask that you affirm the decision. Apparently not. Thank you. Your Honors, I'll pick up where my opponent left off. I think there is a rule. This court stated again, and I won't repeat what I said in Gunter as a quotation. Here's what this court said in United States v. Smith a year later in 2007. There must be a substantial basis to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place. It was quoting, in fact, Illinois v. Gates, the Supreme Court case that Ms. Hayes just cited, referred to. To answer the question about magistrate judge's judgment, Judge Black, and that's a very good question. The fact and the practical approach to this issue, and I think that's what we're all somewhat grappling with, is that if there is person X who is a major drug dealer, and I realize Frazier says just because you deal in drugs doesn't mean you get to go into the person's home. That's a very sound foundation to start with. But if a person's a major drug dealer, they're not going to just find one text that's somewhat unintelligible. They're going to find hundreds of texts, thousands. These are the cases that we get when we defend and the U.S. Attorney comes to us and says, hey, if you want, I got 10 CDs of phone calls over the last week of drug dealing between your guy from his home on 125 Maple Street, and we know it because we've got a cell phone tower and we've triangulated it and we know exactly where these phone calls are coming from. That's a major drug dealer. So, Your Honor, when the magistrate judge gets that type of evidence, it's a, frankly, almost a foregone conclusion that the residence is tied in because the U.S. Attorney's Office has done such a good job to tie it in. That's the practical aspect. That's what a major drug dealing from a residence is. That's why, Your Honor, Judge Stranch, when you mentioned Gunter, all these other cases, those were indeed major drug dealers. And there's a lot of evidence suggesting that the drug dealing wasn't going out of someone's home. Frazier was too. Right, exactly. When they're doing it out of their home, everyone knows it from the U.S. Attorney's Office and the DEA because they're monitoring it. Here we just have mere speculation. That's the problem with this case. When Middleton picks up his phone, we don't hear Brown's voice. When they open up the phones, there's two of them with huge memory banks, I'm sure. Or one text message that's illegible about cocaine that has nothing to do with this case or his home or the evidence found in his home or the evidence found in Middleton's home or the evidence found in Stephen Wood's car, the other car that evening. The very fact that we're left with so limited of evidence suggests that simply this is a case where they jumped the gun. If Brown was indeed a major drug dealer, and the evidence bears out that he wasn't, but put that aside, if he were, they should have kept their surveillance up and they would have found it. They waited after all 22 days to get the search of the house anyway. Why weren't they surveilling it is my question. To ensure that the protections this court has so elevated of one's home could be indeed ensured. Thank you, Your Honors. Thank you. The case is submitted. You'll tell your students that they did a good job and you did a reasonably adequate job of protecting their insurance? Very well.